UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CALEB KITTRELL                              CIVIL ACTION

VERSUS                                      NO. 24-2947

ENSCO OFFSHORE, LLC,  ET AL.                SECTION: D(5)

## ORDER AND REASONS

Before the Court is Plaintiff's Daubert Motion to Exclude the Testimony of Defendants' Expert Perrin R. Roller, filed by Plaintiff Caleb Kittrell.[1] Defendants Ensco Offshore, LLC, and Rowan Offshore Luxembourg S.a.r.l. ("Defendants") oppose the Motion.[2] After careful consideration of the parties' memoranda and the applicable law, the Court **DENIES** the motion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[3]

This matter concerns an incident aboard the Valaris 144 while the vessel was performing offshore drilling services in the Gulf of Mexico off the Louisiana coast.[4] Caleb Kittrell worked as a roustabout for Ensco Offshore on board the vessel owned by Rowan Offshore Luxembourg.[5] On December 27, 2023, Kittrell was instructed to disconnect a jet line hose on board the vessel; however, as he went to disconnect the line, not knowing the line was still pressurized, the line disconnected and struck Kittrell's hand resulting in injuries to his hand, including a "gamekeeper's" fracture.[6]

---

[1] R. Doc. 31.
[2] R. Doc. 33.
[3] The factual background is drawn from Plaintiff's first amended complaint. *See* R. Doc. 15. The inclusion of the statements in the complaint here is for context and does not afford them the benefit of truth.
[4] R. Doc. 15 at ¶ V.
[5] *Id.*
[6] *Id.* at ¶ IX.

1

As a result of this incident, Kittrell had surgery to repair his hand and continues to suffer pain in his left thumb and index finger.[7]

Plaintiff filed suit on December 27, 2024, against Defendants Ensco Offshore, LLC ("ENSCO"), Rowan Offshore Luxembourg S.a.r.l. ("Rowan"), and the Valaris Ltd, asserting claims under the Jones Act, the General Maritime Law of Unseaworthiness and for the Seaman's Remedy of Maintenance and Cure.[8] Plaintiff filed an amended complaint on May 8, 2025, dismissing Valaris Ltd. and maintaining his claims against ENSCO and Rowan.[9]

Perrin R. Roller, PE, a professional petroleum engineer, was retained by Defendants to opine about the investigation of the incident at issue in the case and the operations that were conducted.[10] In forming his opinion Roller reviewed Plaintiff's Complaint and Amended Complaint, fact depositions, including that of Caleb Kittrell, the Valaris Incident Report, Kittrell's written and recorded statement, crew member statements, various documents about work permits and job safety analysis, and safety meeting presentations.[11]

After his review of the records, Perrin rendered his final opinion regarding liability for the incident at issue in the present case. He opined that

    a.    The Ensco accident investigation report does recommend some improvements to the procedures for jet hose removal. However, it does not state the obvious factor that proper and safe hand placement by the injured person (Mr. Kittrell) would have prevented the injury.

---

[7] *Id.*
[8] R. Doc. 1.
[9] R. Doc. 15.
[10] R. Doc. 31-2, *Expert Report of Perrin R. Roller, P.E.*
[11] R. Doc. 33-2, *Attachment 2 of Expert Report*, at pp. 25-26.

     b.    Valaris 144 Operations: The Valaris 144 was conducting jetting operations for several weeks prior to the incident involving Mr. Kittrell. In fact, the rig was performing the jetting operations, almost exclusively for this time period. Mr. Kittrell would have seen and known the operations that were being conducted during his time for this particular hitch on the rig.

     c.    Valaris 144 Work Permit Process: The Work Permit and Work Instructions for the multiple tasks to be performed were assembled as a complete packet for the final Job Safety Analysis that was performed just prior to the actual work. It is not unusual to have several sets of work instructions assembled under a single work permit. There was no indication during the Valaris investigation that anything improper was done with the Work Permit, Work Instructions or Job Safety Analysis.[12]

Roller further stated in his report that

> In my opinion, the JSA and Work Instruction Procedures that were used for the operation during which the incident and injury to the plaintiff occurred, were adequate and reasonable.
>
> There are a number of job activities that happen during rig operations that require "On-The-Job Training." The connecting and disconnecting of hammer unions is one of those jobs. At this time, I have not seen or heard rumor of a training manual for this specific task of disconnecting a hammer union. This was confirmed as being a part of the Valaris/Ensco On-The-Job Training. What this task required was simply Communication (proper communication with the others involved in the task); Confirmation (and continuous feed-back with those being communicated with); and lastly, Common Sense.
>
> Above all of these actions was the ability and responsibility of the anyone, including Mr. Kittrell call a Stop Work to communicate, confirm or otherwise reassess the risk involved in the steps they were undertaking to perform the task of disconnecting the hammer union on the jet hose assembly.[13]

Plaintiff filed the instant Motion pursuant to *Daubert* on December 8, 2025, challenging the testimony and opinions of Roller.[14] Plaintiff does not challenge Roller's qualifications to opine as an oil and gas operations and process safety expert.

---

[12] R. Doc. 31-2 at p. 16.
[13] R. Doc. 31-2 at p. 17.
[14] R. Doc. 31.

Rather, the Motion focuses on the reliability prong of the Fed. R. Evid. 702 analysis. Plaintiff takes issue with the methodology underlying Roller's opinions and argues that the opinions provided "are speculative and conclusory and give no specialized knowledge or expertise on how or why the incident occurred."[15] Furthermore, he contends that the opinions "are not supported by proper reasoning and methodology to be accepted" and that they represent "his own personal opinion, not a scientifically reliable opinion."[16] As such, Plaintiff requests that the Court exclude the testimony of Roller regarding any of his conclusions at trial.[17]

Defendants oppose the Motion.[18] While Plaintiff does not contest Roller's qualifications, Defendant emphasizes that the expert "has more than 40 years of experience in the oil and gas industry, including significant experience working offshore on jack-up drilling rigs" and "has literally done work breaking hammer unions on land rigs and offshore rigs."[19] Defendants argue that Plaintiff's disagreements with Roller's opinions are best addressed during cross-examination and are "quintessential jury questions."[20] Defendants further state that Roller's opinions are not speculative and are grounded in the facts of the case, further demonstrating that his opinions are reliable and fall within the scope of Rule 702.[21]

---

[15] R. Doc. 31-1 at p. 7.
[16] *Id*. at p. 8.
[17] *Id*. at p. 9.
[18] R. Doc. 33.
[19] *Id*. at p. 7.
[20] *Id*. at p. 8.
[21] *Id*. at pp. 9-10.

## II.    LEGAL STANDARD

The district court has considerable discretion to admit or exclude expert testimony under Fed. R. Evid. 702,[22] and the burden rests with the party seeking to present the testimony to show that the requirements of Rule 702 are met.[23]  Rule 702 first requires that a witness is qualified "as an expert by knowledge, skill, experience, training, or education[.]"[24] "District courts must be assured that the proffered witness is qualified to testify by virtue of his knowledge, skill, experience, training, or education."[25] "To qualify as an expert, the witness must have such knowledge or experience in his field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth."[26]

Rule 702 provides that an expert witness "qualified . . . by knowledge, skill, experience, training, or education may testify in the form of an opinion" when all of the following requirements are met:

> (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b)    the testimony is based on sufficient facts or data;
> (c)    the testimony is the product of reliable principles and methods; and
> (d)    the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.[27]

---

[22] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000); *Tajonera v. Black Elk Energy Offshore Operations, LLC*, Civ. A. No. 13-0366 c/w 13-0550, 13-5137, 13-2496, 13-5508, 13-6413, 14-374, 14-1714, 2016 WL 3180776, at *8 (E.D. La. June 7, 2016) (Brown, J.) (citing authority).

[23] *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

[24] Fed. R. Evid. 702.

[25] *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 881 (5th Cir. 2013)(citation modified).

[26] *U.S. v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999)(discussing witnesses whose expertise is based purely on experience).

[27] Fed. R. Evid. 702.

Rule 702 codifies the Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, which charges district courts to act as "gatekeepers" when determining the admissibility of expert testimony.[28] "To be admissible under Rule 702, the court must find that the evidence is both relevant and reliable."[29] Even if an expert satisfies *Daubert* and Rule 702, "[e]xperts cannot 'render conclusions of law' or provide opinions on legal issues."[30]

According to the Fifth Circuit, reliability is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid, while relevance depends on whether the reasoning or methodology underlying the testimony can be properly applied to the facts at issue.[31] The purpose of the reliability requirement is to exclude expert testimony based merely on subjective belief or unsupported speculation.[32]

To satisfy the reliability prong of the *Daubert*/Rule 702 analysis, a "party seeking to introduce expert testimony must show (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."[33] To prove reliability, the proponent of the expert testimony must

---

[28] *United States v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)).

[29] *United States v. Ebron*, 683 F.3d 105, 139 (5th Cir. 2012) (citing *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010)).

[30] *Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020) (quoting *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009)).

[31] *Ebron*, 683 F.3d at 139 (quoting *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002)).

[32] *Tajonera*, 2016 WL 3180776, at *8 (citing *Daubert*, 509 U.S. at 590).

[33] *Recif Res., LLC v. Juniper Cap. Advisors, L.P.*, Civ. A. No. H-19-2953, 2020 WL 5623982, at *2 (S.D. Tex. Sept. 18, 2020) (quoting *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009)) (internal quotation marks omitted).

present some objective, independent validation of the expert's methodology.[34]  The reliability inquiry requires the Court to consider certain factors including: (1) whether the technique has been tested; (2) whether the technique has been subjected to peer review and publication; (3) the technique's potential error rate; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique is generally accepted in the relevant scientific community.[35]  The objective of this Court's gatekeeper role is to ensure that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[36]

Finally, proposed "expert testimony must be relevant, not simply in the sense all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue."[37]  "[T]he trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument."[38]

## III.  ANALYSIS

The Court notes that Plaintiff does not challenge the Roller's qualifications, accordingly its analysis will focus on the reliability and relevance of Roller's testimony in the case.[39]

---

[34] *Id.* (citing *Brown v. Illinois Cent. R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013)).

[35] *See Burleson v. Texas Dep't of Crim. Just.*, 393 F.3d 577, 584 (5th Cir. 2004).

[36] *Kumho Tire Co.*, 526 U.S. at 152; *Hodges v. Mack Trucks Inc.*, 474 F.3d 188, 194 (5th Cir. 2006).

[37] *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003).

[38] *In re Air Crash Disaster at New Orleans, Louisiana*, 795 F.2d 1230, 1233 (5th Cir. 1986).

[39] The Court will rule on any objections to Roller's qualifications if and when he is offered as an expert witness at trial.

Plaintiff challenges Roller's opinions arguing that they are not based on reliable methodology. Defendants argue that Roller should be permitted to testify based on his extensive experience in the oil and gas industry.[40] The Court agrees. Because the "*Daubert* test is flexible and takes into consideration that an expert may be qualified by experience to testify on matters within his expertise," an expert witness can opine on issues based on his experience in the field."[41] Roller's *curriculum vitae* and affidavit detail his experience in the oil and gas field, from his start as a "roughneck" to his current role as a petroleum engineer and industry consultant.[42] In addition to his personal experience in the oil and gas industry, having performed the task that Plaintiff performed in the present case, Roller relies upon industry practices[43] and the Code of Federal Regulations[44] to supplement his methodology. The Court finds that Roller's over forty years of experience in the field and his reliance on industry standards and applicable federal regulations in his report are "sufficient to withstand a Rule 702 challenge."[45]

Plaintiff points to Roller's opinion that "The Valaris 144 was conducting jetting operations for several weeks prior to the incident involving Mr. Kittrell.  In fact, the right was performing the jetting operations, almost exclusively for this time period.  Mr. Kittrell would have seen and known the operations that were being conducted

---

[40] R. Doc. 33 at p. 6.
[41] *Padgett v. Fieldwood Energy, LLC*, No. 6:18-CV-00632, 2020 WL 1492836, at *3 (W.D. La. Mar. 26, 2020).
[42] R. Doc. 33-1 at pp. 1-2; R. Doc. 33-2 at pp. 21-24.
[43] R. Doc. 33-2 at p. 8.
[44] R. Doc. 33-2 at p. 10.
[45] *Smith v. Transocean Offshore USA, Inc.*, No. CV 19-14738, 2021 WL 3666174, at *3 (E.D. La. Aug. 18, 2021)

during his time for this particular hitch on the rig" to argue that this opinion is highly speculative and conclusory.[46] While Plaintiff argues that Roller's opinions are speculative and conclusory, the remedy is not exclusion of the opinions but vigorous cross-examination.[47] Concerns about the bases and sources of an expert's opinion "affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."[48] As a result, "[i]t is the role of the adversarial system, not the court, to highlight weak evidence."[49] Courts only break from this rule when confronted with expert testimony that relies on "completely unsubstantiated factual assertions."[50] Roller's Report details the numerous depositions, documents, and statements which he used to form his opinion in the present case.[51] Because the opinions offered by Roller does not rely on completely unsubstantiated factual assertions, the Court will not exclude his testimony based on Plaintiff's challenge to its reliability. The weaknesses that Plaintiff points out[52] in Roller's report and opinions are weaknesses that Plaintiff can raise during cross-examination and highlight in argument to a jury at trial.[53]

---

[46] R. Doc. 31-1 at p. 5.
[47] *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 596, 113 S. Ct. 2786, 2798, 125 L. Ed. 2d 469 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").
[48] *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty., State of Miss.,* 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.,* 826 F.2d 420, 422 (5th Cir.1987)).
[49] *Primrose Operating Co. v. Nat'l Am. Ins. Co.,* 382 F.3d 546, 562 (5th Cir. 2004)
[50] *McCrary v. John W. Stone Oil Distrib., L.L.C.,* No. CV 14-880, 2016 WL 760744, at *3 (E.D. La. Feb. 26, 2016) (Africk, J.).
[51] R. Doc. 33-2 at pp. 25-26.
[52] R. Doc. 31-1 at pp. 4-6.
[53] *See Primrose Operating Co.,* 382 F.3d at 562.

Plaintiff frames his challenge as to Roller's lack of methodology as additionally failing to comport with Rule 702's requirement that expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue."[54] The Advisory Committee Note to the Rule states

> There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.[55]

Having considered the opinions offered in light of the facts as alleged by Plaintiff, and further having determined that Roller's opinions are based not only on his experience working in the oil and gas industry but also upon federal regulations and standard industry practice, the Court finds that his testimony will aid the trier of fact in understanding the complicated practices and procedures of working on a vessel offshore in the oil and gas industry. The Court thus finds that Roller's testimony comports with this requirement of Rule 702.

For those reasons, the Court denies the Plaintiff's Motion to exclude the testimony of Defendants' expert Perrin R. Roller.

---

[54] FED. R. EVID. 702.
[55] *Id.*, Advisory Committee Notes.

## IV.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's Daubert Motion to Exclude the

Testimony of Defendants' Expert Perrin R. Roller [56] is **DENIED.**

New Orleans, Louisiana, February 2, 2026.

**WENDY B. VITTER**
**United States District Judge**

---

[56] R. Doc. 31.